FILED

12/27/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Brief October 27, 2022, at Knoxville

## STATE OF TENNESSEE v. TIMOTHY CURTIS GREENMAN

**Appeal from the Circuit Court for Lincoln County**
**No. 20-CR-22   Forest A. Durard, Jr., Judge**

_____

### No. M2021-01061-CCA-R3-CD

_____

A Lincoln County jury convicted the Defendant, Timothy Curtis Greenman, of three counts of sexual exploitation of a minor more than 100 images and one count of sexual exploitation of a minor more than fifty images, and the trial court sentenced him to a total effective sentence of thirty years of incarceration. On appeal, the Defendant contends that: (1) the trial court erred when it denied his motion to suppress; (2) the evidence is insufficient to sustain his convictions; (3) the trial court erred when it denied his motion for new trial; and (4) the trial court erred when it sentenced him. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., P.J., and CAMILLE R. MCMULLEN, J., joined.

Jonathan C. Brown, Fayetteville, Tennessee, for the appellant, Timothy Curtis Greenman.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval and Jeff Ridner, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
## I. Background and Facts

This case arises from a search of the Defendant's cell phone, pursuant to a search warrant, in an unrelated investigation concerning the sale of narcotics. During the search, law enforcement found pornographic images of children on the cell phone. Law enforcement sought the Defendant's permission to access a locked image gallery on his

cell phone, which he granted, and they found a large number of pornographic images of children therein. For these offenses, a Lincoln County grand jury indicted the Defendant for four counts of sexual exploitation of a minor where the number of images exceeds 100.

## A. Motion to Suppress

Prior to trial, the Defendant filed a motion to suppress his statement to law enforcement and the evidence extracted from his phone. As background, the Defendant detailed in his motion that, as a result of a December 4, 2019 incident, he was arrested on December 6, 2019, and later charged with aggravated assault, being a felon in possession of a weapon, and several narcotics offenses. Law enforcement took possession of his cell phone at the time of his arrest. The Defendant was interviewed on December 7 as a result of his arrest, and he invoked his right to remain silent at the interview. On December 10, law enforcement officers obtained a search warrant for the Defendant's cell phone, which was identified in the search warrant by its "IMEI" number. A forensic analysis of the cell phone was conducted on December 11, and law enforcement conducted a second interview with the Defendant on that same day.

In his motion to suppress, the Defendant contended that the data extracted from his cell phone on December 11 was illegally obtained by law enforcement because, in order to obtain the "IMEI" number from the phone, law enforcement had to remove the SIM card from the phone, which he contended amounted to a "direct illegal search." As to his December 11 statement to law enforcement, which was made while he was in custody at the Lincoln County Sheriff's Department, the Defendant contended that it was illegally obtained because he had appointed counsel, having been arraigned the previous day.

The Defendant filed a second motion to suppress, contending that the search of his cell phone had far exceeded the scope of the search warrant. The Defendant contended that officers had provided a sworn affidavit, attached to the warrant application, stating that they would perform a "keyword search" of the cell phone to find specific information related to narcotics violations. He contended that the actual search performed by law enforcement had been of the entirety of the phone's data and was therefore overly broad.

The State responded with a motion to strike the Defendant's motions to suppress on the grounds that they were untimely filed pursuant to Tennessee Rule of Criminal Procedure 12(c) and that his claims were waived pursuant to Rule 12(f).

The trial court held a hearing on the Defendant's and the State's motions, during which the following evidence was presented: Mike Pitts testified that he was an investigator with the Lincoln County Sheriff's Department and applied for a search warrant for the Defendant's residence on suspicion of possession of a firearm. A search of the residence revealed ammunition and narcotics, and the Defendant, a convicted felon, was arrested on December 7, 2019. He was interviewed that same day relevant to aggravated assault and

2

felonious possession of a firearm charges. Investigator Pitts recalled that the Defendant was advised of his *Miranda* rights at that time and that the Defendant indicated he did not wish to speak with law enforcement without counsel present, at which point the interview ceased.

Law enforcement sought a second search warrant, dated December 10, 2019, for the Defendant's cell phone related to his suspected communication for purchasing narcotics and arranging drug deals. The cell phone had been recovered from the Defendant at the time of his arrest on December 7. Investigator Pitts identified the Defendant's cell phone number on the application along with the device's "IMEI" number.

About the data that was extracted from the Defendant's cell phone, Investigator Pitts stated that it contained photographs of young naked children. He could not recall for certain whether any evidence of narcotics violations was contained in the extracted data.

When asked by the trial court to clarify, Investigator Pitts stated that another investigator had extracted the data from the Defendant's cell phone, looking for evidence of narcotics sales and had found pornographic images of children in the process. He clarified that the original search warrant was for the Defendant's residence, related to a weapon, and the second warrant was for the cell phone, related to narcotics sales.

Nathan Massey testified that he served as an investigator in this case on behalf of the Lincoln County Sheriff's Department. Investigator Pitts brought him the Defendant's cell phone, which was locked. Investigator Pitts returned the following day with a search warrant authorizing a search of the Defendant's cell phone based on probable cause that it contained evidence of narcotics offenses. The warrant authorized a search of images, graphic files or "any other data" that would appear to be a narcotics violation. Investigator Massey performed the extraction on the Defendant's cell phone and found images in a password protected photo gallery. He stated that there were 500 pornographic images of children found on the cell phone. When asked if Investigator Massey expected to find evidence of drug offenses in photographs on the cell phone, he stated that images of drug paraphernalia, prescription pills, or drug manufacturing were all possibilities. He stated that he "just happened" to find pornographic images of children. He could not remember if images pertaining to drug offenses were found. Once the pornographic images were found, the investigation for drug offenses continued alongside a new investigation into child exploitation.

Investigator Massey recalled that he interviewed the Defendant at some point and told him he had some other topics to discuss with him besides the narcotics. Investigator Massey asked the Defendant for the passcode to the locked gallery on his cell phone. The Defendant entered the passcode at which point he discovered more pornographic images of children, so Investigator Massey photographed the images on the cell phone to preserve the evidence. Investigator Massey stated that the images were of girls under five years old

3

completely nude. During his interview with the Defendant, Investigator Massey made him aware that a search warrant for his cell phone had been granted and read the Defendant his *Miranda* rights, following which the Defendant signed a waiver. He provided the Defendant with a copy of the warrant and made clear to the Defendant that he was interviewing him about the contents of his cell phone. Investigator Massey stated that he did not find evidence of drug offenses on the cell phone but did find images related to gang activity.

Following the hearing, the trial court issued an order denying the Defendant's motions, making the following findings:

> *The search warrant in the drug case did not authorize law enforcement to look for child pornography and when the pornography was discovered law enforcement should have discontinued their search of the phone and obtained a search warrant for further extraction of child pornography.*
>
> The court would generally agree the search warrant did not authorize law enforcement to examine the Defendant's phone for child pornography. In fact, law enforcement had not an inkling [that] child pornography was on the phone until the initial extraction which dumped 183 images. A fair reading of the search warrant indicates several times the warrant is seeking evidence of "Narcotics Violations", not child pornography. The Defendant agreed, after a signed rights advisement, to discuss the child pornography matter with Massey and voluntarily provided the pass code to the Privary app where the remainder of the images beyond the first 183 images downloaded in the initial extraction was stored. While the search warrant did not allow for a search of child pornography, the search could continue for narcotics violations in places reasonably expected to discover the same. If Massey had searched in places where it is unlikely or unreasonable to find narcotics violations and found child pornography, the outcome could be different. However, this is factually driven and not really the issue given the facts of this case.
>
> . . . .
>
> Turning to the facts of the instant case, when Massey executed his initial extraction of data from the Defendant's phone 183 images of child pornography were downloaded in the mix of everything else. The remaining images eventually found were in the Privary app and were password protected and not downloaded. Whether Massey believed the search warrant for drug activity permitted him to keep searching is not really an issue because his search had ended since he could not gain entry to the contents of the Privary app. Had Massey been able to continue to search believing the

warrant for drug activity gave him authority to now search for both drug activity and child pornography, as in *Carey*, his additional findings may have been in jeopardy, at least to the child pornography. Anyway at that point, the search of the phone was discontinued and the Defendant Greenman was summoned for an interview. The Defendant, after a rights advisement, consented to the interview and voluntarily entered the Privary app password to allow Massey to access the contents. This is a distinguishing factor between this case and the *Walser* and *Carey* cases. In neither of those cases was the Defendant asked or gave consent to further search beyond the scope of the original warrant for drug activity.

*Defendant claims the IMEI number obtained on the phone by law enforcement constituted a search.*

Defendant in his pleadings contended the cell phone had to be opened and searched in order to locate the identifying IMEI number. At the hearing the evidence adduced indicated the IMEI for this particular model phone was actually readily viewable on the exterior back of the phone and, consequently, no intrusion into the phone was necessary. However, even if law enforcement had to open the back of the phone or a compartment to obtain the number the same does not constitute a search for data as prohibited by *Riley v. California*, 573 U.S. 373 (2014). *See State v Brown*, No M2017-00904-CCA-R3-CD, 2019 WL 1514551, (Crim. App. Ct., Middle District, 04/08/2019). This issue is without merit.

*Since the Defendant was represented by counsel in the drug case he should not have been interviewed by law enforcement about the child pornography found on the phone despite waiving Miranda in writing.*

First, Defendant's original motion to suppress at page 4 alleges the Defendant asked for counsel and complains Massey never told the Defendant he could contact the attorney representing him on the unrelated drug matter. Evidence presented indicated a valid rights waiver which advised the Defendant he was entitled to counsel if he so chose on the topic of child pornography. The Defendant signed the waiver acknowledging his rights and cooperated with Massey. There is no evidence the Defendant seemingly does not contest the validity of the waiver or admonition of rights. Defendant asked for counsel in either the pending drug case or the child pornography case being investigated. To the contrary, there is credible evidence the Defendant exercised his right to remain silent when Sgt. Pitts attempted to interview him relative to only the drugs and there is, further, credible evidence Sgt. Pitts "scrupulously honored" the invocation of that right. It was not until several days later the child pornography was discovered and

that investigation began.

While Defendant complains about already having counsel in the drug case, under the Sixth Amendment to the U.S. Constitution there was no right to counsel for the child pornography investigation since there had been no initiation of judicial proceedings. This is irrespective of whether the Defendant was in custody or not and irrespective of whether he had already been appointed an attorney in the unrelated drug case. The matter simply was being investigated. *Massiah v U.S.*,377 U.S. 201, 84 S.Ct. 199 (1964). Going further, while there was unquestionably a custodial interrogation under the Fifth Amendment to the U.S. Constitution; however, the statement elicited was voluntary, knowing, intelligent and uncoerced with a proper waiver of rights under *Miranda*.

Just because the Defendant invoked his right to remain silent in the drug case does not ipso facto mean questioning was prohibited in the child pornography investigation.

. . . .

In the instant matter, once the Defendant invoked his right to remain silent in the drug cases all questioning appears to have ceased. It was not until days later upon the discovery of the child pornography on the Defendant's phone did questioning resume and solely upon an unrelated topic to that of drugs. In this case the Defendant's right to remain silent was scrupulously honored in the drug case and additional later questioning about child pornography was not prohibited. Thus, statements made by the Defendant and evidence obtained as a result of the interrogation is admissible.

## A. Trial

The following evidence was presented at the Defendant's trial: Sergeant Jesse Mills testified that he worked for the Lincoln County Sheriff's Department and that he conducted a December 6, 2019 traffic stop of the Defendant's vehicle, in a matter unrelated to this case, and subsequently took possession of the Defendant's cell phone.

Investigator Mike Pitts, also employed by the Lincoln County Sheriff's Department, testified that he was given the Defendant's cell phone by another officer, which he secured in his office until presented with a search warrant for the phone. Investigator Pitts provided the signed search warrant and the cell phone to Investigator Nathan Massey who performed a forensic examination, or data "dump," on the cell phone. The examination revealed child pornography images contained on the phone.

6

Investigator Massey testified about his forensic examination of the cell phone. He identified the phone report and a few messages where the Defendant identified himself. There were also pictures of the Defendant and emails from an account listed under the Defendant's name and birthday. A quick scan of the images on the cell phone tallied 183 images of nude minor children which Investigator Massey was able to determine, based on his experience with data extraction, had come from the "dark web." Investigator Massey also identified a "Gallery Lock" file which he knew to be a file with images stored behind a passcode. He also identified an application on the phone known as "Privary," which he stated was used to store hidden images.

Following his recovery of the 183 images, Investigator Massey interviewed the Defendant on December 11, 2019. He informed the Defendant of his *Miranda* rights and the Defendant waived those rights. The interview was audio and video recorded and was played aloud for the jury. In the interview, the Defendant stated that the cell phone had been in his possession for several weeks and that he had gotten it from a friend named Milo. He stated that he had borrowed the cell phone from Milo periodically and messaged people saying that the associated phone number was now his. The Defendant clarified that he had possessed the cell phone for the majority of the prior two to three months. The Defendant agreed that there were "hidden" images on the phone. The Defendant said that he had viewed pornographic images of girls as young as ten, and that, when he did so, his phone would freeze. He stated that he used an "incognito" browser to search the images.

The Defendant agreed that some of his searches, including "young sexy girl," returned images of child pornography that he saved in a locked gallery on his phone. He did this so he could hide the images but denied an interest in child pornography. He stated that "teen porn" was definitely of interest to him and that the purpose of his looking at or watching porn was for masturbation. He agreed that, in some of images, he definitely was aware that the girls depicted were younger than ten years old. He stated, however, that saving those images to his phone had been inadvertent and that he did not masturbate to child pornography.

When asked about the pornographic images of children found on his phone, initially totaling 183 images, the Defendant expressed embarrassment and shame. At Investigator Massey's request, the Defendant typed in a passcode on his phone that unlocked a gallery of images, which he acknowledged contained child pornography that he saved so he could access the images more than once. The total number of images found exceeded 500.

Investigator Massey took photos of the images to preserve them as evidence. He stated that the files were labeled "New Bi**hes" and "Bi**h[e]s." He clarified that he accessed the locked images after the Defendant typed his passcode into the cell phone. The Defendant said that he was using two searches to find the images: "young sexy girls" and "teen porn." The Defendant identified two internet browsers that he used to search the

7

images: "TOR" browser, which Investigator Massey knew to be a search browser of the "dark web," and Chrome "Incognito."

Investigator Massey accessed the locked images on the cell phone. The images were shown to the jury and described by Investigator Massey before being entered into the record as exhibits. Investigator Massey described each of the images generally as being of young females with their vaginas, buttocks, or breasts being the focal point of the images. He described some of the images showing young girls being vaginally or anally penetrated by a penis or an object. He described one image of a young girl wearing a Barbie shirt with her vagina visible.

On cross-examination, Investigator Massey testified that the Defendant told him during the interview that he had gotten the cell phone from another individual, Milo Hasan, but that it was "his phone." Everything from the data extraction indicated to Investigator Massey that the phone belonged to the Defendant. Investigator Massey found a contact number in the phone for Milo Hasan as well as incoming communication from that number to the Defendant's phone. This, along with the Defendant's statement that he was using the phone, credited Investigator Massey's conclusion that the Defendant was in possession and use of the phone.

Investigator Massey agreed that in some of the images depicting young girls, their faces were not visible, making it difficult to determine their age.

Based on this evidence, the jury convicted the Defendant of three counts of sexual exploitation of a minor more than 100 images and one count of sexual exploitation of a minor more than fifty images.

## C. Sentencing

The trial court held a sentencing hearing, at which the presentence report was admitted as evidence into the record. Michelle Banks, a Tennessee Department of Correction employee, who prepared the report after interviewing the Defendant, stated that the Defendant admitted to persistent alcohol use and habitual illegal drug use. Ms. Banks testified that the Defendant had prior convictions for possession of methamphetamine, aggravated burglary, aggravated robbery, shoplifting, auto burglary, and attempted burglary. The Defendant had also violated the conditions of his prior release on parole. The Defendant had pending drug charges at the time of sentencing.

Based on this evidence, the trial court stated the following:

> The first thing the Court has to determine is what range of offender [the Defendant] may be. And in this particular case he has three B felonies and one C felony he was convicted of. For purposes of enhancement he has

an aggravated robbery and an aggravated burglary, they both occurred the same day and one involves an offense against a person so hence they do not merge. So the Court will determine that for purposes of sentencing on all of the counts in this case he will be a Range 2 offender with a 12 to 20 year span on the B's and 6 to 10 year span on the C felony.

The next thing we have to determine is the enhancement factors and mitigating factors. Certainly enhancement factor 1 applies, he has prior criminal convictions in this case as so stated in the Presentence Report and uncontested. I'm going to address 8 and 13. Eight being he failed to comply with conditions of sentencing involving release in the community. This was a case unrelated to this as demonstrated in the presentence investigation. And of course 13 applies in this case because he was on parole at the time of this offense, thus that would make any sentence that I do today would be consecutive to that parole by operation of law. However it appears by everything that it expired on March 4, 2020. So really for today[']s purposes the only thing that affects is the presentence credits. In this case he was serving a parole revocation until March 4 of 2020. So any amount of credits before then would apply to his case, but all the credits since then would.

Now the State advances enhancement factor 7, pleasure or excitement. Sometimes you look at these cases, particularly like a rape case well that would always be done for pleasure or excitement. That is not necessarily true. According to case law sometimes it is for domination and control more than anything else. I think if one were to apply this factor I think there is ample proof in the record based on statements given to Agent Massey why he looked at those particular images. So I find I can't specifically point to a case that says it would apply in this case but I think it makes sense. But even if I were in error, it is not going to affect what I do today.

So I'm going to find that all of those apply, one heavily, 8 and 13 heavily, 7 to a lesser degree but again even if 7 was in consideration I don't think it would move the needle in any respect.

. . . .

Now back on to where I was, after I looked at the enhancing and mitigating factors in this situation then I have to make some determination as to the length of the sentence. And so in this particular case given the enhancement and mitigating factors, I think I can easily justify the 20 years but I have to look on each one of the B's, I have to look at the overall structure of the sentence. . . . . So I believe at least for the first two B felonies a sentence of 18 years is appropriate. So then I have to look at the next 2

9

sentences. What I'm going to do the Class C sentence easily reaches the maximum of 10 years. And I have the other B, and that particular B I'll explain what I'm going to do here in a minute. It appears a little bit inconsistent until you reflect on the case I just mentioned. It is going to be a 12 year sentence. and mitigating factors in this case. So you have two 18 year sentences at 100 percent, a 12 year sentence at 100 percent, a 10 year sentence at 35 percent. But then I have to move on and determine whether this is consecutive or concurrent sentencing.

In this particular case as I mentioned the Parole this would be operation of law consecutive to Parole although it is moot to a large degree except for sentence credits. I disagree with the State that there is ample proof in the record that demonstrates that [the Defendant] is a professional criminal who knowingly devoted such life to criminal acts as a major source of livelihood. You see that particularly in cases where we have a person that has been dealing drugs over a long period of time. They have no other means of support. That is their business dealing drugs as opposed to somebody who is a petty drug dealer and user and he sells a little bit and pinches a little bit off to support his habit but there is the distinction. So really I don't believe in this case there is enough in the record to apply enhancement factor 1. And the one that would apply here -- So and that is based upon enhancing excuse me, not enhancement factor but the one on consecutive sentencing under 40-35-115. Number 2 is the one that requires the most debate. Yes, agree, Mr. Brown, we all have seen sentences of people who had a more expansive record. Of course [the Defendant] has managed to in his 30 plus years of existence there to have gotten a fairly extensive record since age 18. The presentence investigation shows he was born December 6, 1988. So at the time of this offense he would have been around 30 years of age give or take a little bit. So between 18 and 30 he has already gotten at least four felonies, one for aggravated robbery which is a terrifying crime for anybody to endure, aggravated burglary, two auto burglaries. He had a number of things I noticed in the Presentence Report where he was charged with it looks like auto burglary, a lot of them were reduced. He still on top of the four felonies has five other misdemeanors, simple possession, theft, joyriding, attempted burglary was subject to discussion a little while ago because it looks like it would have been an E felony. The judgments reflect it is not. And then we have facilitation of auto burglary and that was also reduced from auto burglary or making it a misdemeanor, facilitation. So in a short period of time [the Defendant] has managed to get a significant record in my mind, and it is really -- you can't -- I don't know of a case that says there is X number of convictions that qualify you to be -- to have an extensive criminal history. I can't find that case and if anybody knows more than I do I would appreciate you sharing it with me. Because you can have no criminal history at all and

still have extensive criminal history for your sentence. For example in my series of ten home invasions, you may not have any criminal history before then but you certainly did after you got caught, you don't get ten for one because each successive act is an activity that could be considered extensive under factor 2 under 40-35-115. So I do believe that [the Defendant] is subject to consecutive sentencing in this case under the discretionary portion under number 2. I don't think any of the rest of them particularly apply in this case.

So how the Court is going to structure the sentence is we will take two 20 year sentences and 2 of the B's will be run concurrent to one another and we will take the other B and C and run them concurrent to one another but we will stack the pairs. So that is a total effective sentence of 30 years at 100 percent less credits earned and retained the maximum of 15 percent. Probation is obviously not a consideration nor is community correction in this particular case. I don't feel a necessity to go through those even on the -- I run the C felony concurrent to the other one which he would not be subject to any alternative sentencing any way. But even if I had to address the C felony I would incorporate all of these things I normally incorporate and put in the Presentence Report his social history and mental and physical condition, circumstances surrounding the offenses and so forth, I would deny alternative sentencing even on the C because he has already demonstrated several times he has been on some form of release and failed so that is enough to call that off to begin with.

So in this particular case again we will take the pair of B's at 18 years and we will run those concurrent, and we will take another B and C at 12 years and 10 years respectfully and run those concurrent but the pairs will be run consecutive with one another.

### D. Motion for New Trial

Following sentencing, the Defendant filed a timely motion for new trial, claiming, relevant to this appeal, that the evidence was insufficient to convict him because the pornographic images showed blurred faces, making it impossible to determine the ages of the girls depicted. He contended that the majority of the images did not establish the age of the victim and that the jury failed to determine the ages of the girls. He also contended that many of the images shown were not sexual in nature. He further argued that the trial court should have granted his motion to suppress his statement and the images from his cell phone, and that the trial court incorrectly sentenced him.

Following a hearing, the trial court denied the motion, making the following statement:

The evidence was insufficient as a matter of law to sustain the conviction for 3 counts of sexual exploitation of a minor, over 100 images and one less than a hundred but greater than 50. I would have to disagree with that. I think the evidence was more than sufficient. Also I want to put on the record, sometimes I am a bit meticulous. So with the verdict forms we had a chart for the jury and each image had a JPEG number in the order in which it was presented during trial. And so the jury was able to take that JPEG number being 1, 2, 3 or 50 or 100 or whatever it may have been and go down through there and mark whether it met the definitional elements or did not meet the definitional elements and they totaled them at the end and came up with whatever that number might have been and that was reflected in the jury form. And the itemization of the images was attached to the jury form. And they followed that to a T. Matter of fact we had no questions that I recollect and no issues about use of the forms. In addition to that the jury was allowed to make notes on each JPEG that was in there in the order in which they were presented. And we supplied them with the JPEG number and room to make notes so they would be able to go back and refer to their notes as to what they believed each image depicted. So I think from an organizational element here that the trial was very well done. But Mr. Greenman got a little bit of relief on one count, the State was selective in its organization of which counts had what images so that in the event they were questioned it would be unlikely even if they kicked out a number of them it would be less than 100. And they only did that on one count, so they kind of judiciously selected which images to which count. So I think the case was extremely well tried. So I do find there was sufficient evidence as a matter of law to support the convictions.

Number 2, numerous pictures did not show to the jury the person's face. There were some that did not show the face or were not real clear, however that does not prevent a ruling by the jury in favor of the state on that image because I think the jury could tell if it was an 8 year old or a 20 year old. And we got in to situations where this person could be 16, they could be 17, they could be 20, and we don't know. And I think the jury took that into consideration because they threw out 100 and I thought it was 27, but it was something in that realm. So I think they really looked at it and if they said well we don't know, I think they kicked it out. I mean we had 505 images and what, 378 of them or whatever survived and about 127 didn't. So I think they gave it great consideration. I don't think it is necessary that the person's face be in view. I think there is other ways to discern the age of a person.

Number 3, it just dovetails back into sufficiency. So I will reiterate

12

what I said there.

Number 4 is pretty much a sufficiency argument as well stating that some of the things were not in a sexual nature or depicted lewd or lascivious behavior. And I think the jury took that in to consideration on each picture because we forced that jury to make 505 separate decisions. It was not like they had to determine if it was possession with intent to sell or possession with intent to deliver or whether it was theft of over 10,000 or theft over 2,500 or anything like that. They had 505 separate decisions.

Item 5, the trial court in failing to deny the [D]efendant's motion to suppress, that I erred basically. I put down an opinion as to what I thought. I mentioned that a moment ago when discussing this with Mr. Brown, I stand by my ruling. I think consent was given, I think the distinguishing factor of the cases I cited in my opinion where no consent from the defendant was obtained. Matter of fact no search warrant in one of those cases was even sought and that case was suppressed at least to the remaining images. In the other case the agent had the wherewithal to think I need to stop and get a search warrant because now my search has broadened the scope beyond what I originally asked for, and that was withheld. And I think this case is different in the fact that no search warrant was obtained but consent was given. I did mention in there I did respectfully disagree with Mr. Agent Massey on one issue but it didn't matter because consent was given. The original search warrant did not cover child pornography. At that point Agent Massey had three choices, I think he realized that could be detrimental. He could have sought a search warrant. Or he could do exactly what he did and that was talk to the [D]efendant and get his consent, and that is what happened. So I think that is the turning point in this case versus the cases I mentioned in my opinion are.

As far as the issue about him having counsel in other cases, as far as his election not to talk to Sergeant Pitts on those cases was scrupulously honored, all interrogation ceased on the topic of drugs or some type of altercation that happened at McDonald's I believe it was, a couple of events. So all questioning stopped when the defendant requested that. It was a couple of 3 days later all of this arose when Agent Massey downloaded the information looking for drugs and out popped out if I remember 187 images of child pornography and he was kind of like whoa, I'm sure he was not expecting to see that.

I think I covered item 6 in here with those statements.

Item 7 about the description of Agent Massey and the pictures. I did

13

agree with defense counsel that at times that probably we got a little bit too descriptive. There had to be enough in the record for identification of the pictures. I did sustain your objections. I believe I either instructed Agent Massey not to be so descriptive or I told the State they needed to tell their witness that. And he complied, but every now and then he may have still got a little too descriptive. But in the end the pictures spoke for themselves. The jury gave great consideration to each and every one of them which is evident in their verdict. So even if one were to say he got too descriptive it had zero effect on the verdict.

Regarding the sentence, the sentence is within range. I did comment at the sentence hearing, [the Defendant] at the time of this offense was a young man at least in my mind. And he had already amassed a pretty significant adult record in a short period of time. And the record demonstrated basically one fail after another that gifts of any type of community release were not respected and they were not available on the B felonies anyway. I took all of that in consideration and I believe the sentence is appropriate given the nature of the offense and the history of the [D]efendant.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it denied his motion to suppress and his motion for a new trial; (2) the evidence is insufficient to sustain his convictions; (3) the trial court erred when it denied his motion for new trial; and (4) the trial court erred when it sentenced him.

## A. Motion to Suppress

On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress (1) his statement to law enforcement and (2) the images found on his cell phone. The State responds that the trial court properly denied the motion.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this court reviews *de novo* the trial court's application of the

law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

### 1. Statement to Law Enforcement

The Defendant contends that his statement to law enforcement was illegally obtained because he had previously invoked his right to counsel during the December 7 interview. He contends that this invocation of rights should have remained in effect for the child pornography investigation and December 11 interview. The State contends that the Defendant did not invoke his right to counsel and waived his rights during the interview. We agree with the State.

The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 9 of the Tennessee Constitution protect an accused's privilege against self-incrimination. Moreover, the United States Supreme Court held that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination requires police officers, before initiating custodial interrogation, to advise the accused of his right to remain silent and his right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 478-479 (1966). Assuming the use of these procedural safeguards by police interrogators and provided that the accused is acting voluntarily, knowingly, and intelligently, an accused may waive his Miranda rights. *State v. Mann*, 959 S.W.2d 503, 529 (Tenn. 1997).

The right to counsel guaranteed by the Sixth Amendment and by Article I, section 9 attaches at the time the State initiates adversarial judicial proceedings against the defendant. *Michigan v. Jackson*, 475 U.S. 625, 629 (1986); *State v. Huddleston*, 924 S.W.2d 666, 669 (Tenn. 1996). A defendant's Sixth Amendment right to counsel may have attached at the time of his statement but that does not necessarily mean that the police questioning violated his Sixth Amendment right to counsel. *See Patterson v. Illinois*, 487 U.S. 285, 293 (1988) (explaining that *Miranda* warnings effectively convey to a defendant his right to have counsel present during questioning and also adequately inform a defendant of "the ultimate adverse consequence" of making uncounseled admissions). Further, *Miranda* warnings "suffice[ ] . . . to let [the defendant] know what a lawyer could 'do for him' during the post indictment questioning" namely, advise him to refrain from making statements that could prove damaging to his defense. *Patterson* at 294. Accordingly, "[s]o long as the accused is made aware of the 'dangers and disadvantages of self-representation' during post-indictment questioning, by use of the Miranda warnings, his waiver of his Sixth Amendment right to counsel at such questioning is 'knowing and intelligent.'" *Id.* at 300.

Relevant to this issue, the trial court found that, since there had been no initiation of judicial proceedings at the time of the December 11 interview, there was no right to counsel. This was irrespective of whether or not the Defendant was in custody and irrespective of whether he had already been appointed an attorney in the unrelated narcotics case. The trial court noted that the Defendant did affirmatively invoke his right to remain silent during the December 7 interview and questioning ceased as a result. The trial court stated that the initial invocation of rights did not continue to the second interview, which was conducted on a separate matter. The trial court further concluded that the Defendant's December 11 statement to Investigator Massey was voluntary, knowing, intelligent, and uncoerced with a proper waiver of rights under *Miranda*.

The evidence does not preponderate against the trial court's findings. Upon meeting with the Defendant, Investigator Massey informed him that he had "something else" to discuss besides the narcotics investigation. He advised the Defendant of his rights, after which the Defendant signed a *Miranda* waiver form. The Defendant expressed his understanding of his rights and agreed to speak with the investigator. The Defendant did not express a desire to have counsel present or to stop the questioning. The Defendant went on to voluntarily grant the investigator access to his phone and continue to answer questions about its contents. The Defendant was aware of his option to invoke his right to remain silent, as he had done so in his prior interview. Based on our review, we conclude that the Defendant's statement was knowing and voluntary, as he had read and signed a *Miranda* waiver form. Furthermore, the questions and tactics used by the investigator did not rise to the level of coercion necessary to require the suppression of the statements.

## 2. Cell Phone Images

The Defendant next contends that the pornographic images of children were found on his cell phone as a result of an illegal search and should have been suppressed. He contends that the affidavit attached to the search warrant application was overly broad and that the initial search of the phone, which returned the 183 unlocked pornographic images, had "no bearing" on the permitted search for narcotics violations. The State responds that the search of the Defendant's cell phone, pursuant to the warrant, for narcotics violations, inadvertently revealed the pornographic images of children but was not expanded to a search of the cell phone where it was unlikely or unreasonable to find evidence of narcotics violations. The State also contends that the search was appropriate under the plain view doctrine because the investigator had lawful access to the contents of the cell phone when he uncovered the incriminating and "immediately apparent" evidence of child pornography. We agree with the State.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides as follows:

The right of the people to be secure in their persons, houses, papers, and

16

effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Similarly, article I, section 7 of the Tennessee Constitution provides:

[P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and not to be granted.

Tenn. Const. art. I, § 7.

"[A] search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause of its issuance." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999). To establish probable cause, the affidavit must demonstrate a "nexus among the criminal activity, the place to be searched, and the items to be seized." *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009) (citing *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002)). In determining whether the nexus has been sufficiently established, courts should consider "'whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence.'" *Id.* (quoting *Reid*, 91 S.W.3d at 275). "[U]nlike an affidavit in support of an arrest warrant, an affidavit seeking issuance of a search warrant need not implicate a particular person in the crime under investigation." *State v. Tuttle*, 515 S.W.3d 282, 301 (Tenn. 2017) (citations omitted).

The trial court stated that the search of the cell phone was valid because the first batch of 183 images was done pursuant to a valid warrant. The remaining images were obtained by consent of the Defendant after Investigator Massey asked for the passcode to the locked gallery on the phone. For these reasons, the trial court determined that the images were obtained pursuant to a legal search.

Our review of the record brings us to the same conclusion. The investigator sought a warrant for the cell phone and testified that he viewed the images therein looking for evidence of drug use or paraphernalia, as was authorized by the search warrant. The warrant specifically authorized officers to search for "images" and "video graphic files" related to the narcotics violations and this language was not overly broad. The investigator saw, during his search, images of naked young girls in sexual positions, prompting him to

seek permission to continue his search of the phone's images. The Defendant granted him access to additional images on the phone by entering his passcode of his own volition. For these reasons, we conclude that the images extracted from the cell phone were obtained either a) pursuant to a valid search warrant or b) pursuant to the Defendant's voluntary consent to search. The evidence extracted was thus legally obtained and should not have been suppressed. The Defendant is not entitled to relief.

## B. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to support his three convictions for sexual exploitation of a minor more than 100 images. He contends that there was insufficient proof of the minor ages of the girls in the photographs and insufficient proof that the photographs were sexual in nature. The State responds that the evidence was sufficient to prove that the Defendant possessed pornography depicting minors and argues that proof of the subjects' ages or identities was not required. The State contends that a rational trier of fact could have concluded that the images depicted minors. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the

weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction for sexual exploitation of a minor requires the State to show that the Defendant "knowingly possess[ed] material that include[d] a minor engaged in . . . [s]exual activity; or . . . [s]imulated sexual activity that is patently offensive." T.C.A. § 39-17-1003(a)(1), (2) (2019). The statute provides that "the trier of fact may consider the title, text, visual representation, internet history, physical development of the person depicted, expert medical testimony, expert computer forensic testimony, and any other relevant evidence, in determining whether a person knowingly possessed the material, or in determining whether the material or image otherwise represents or depicts that a participant is a minor." T.C.A. § 39-17-1003(c). Furthermore, "the state is not required to prove the actual identity or age of the minor." § 39-17-1003(e). Tennessee Code Annotated section 39-17-1002(2) defines "material" as "[a]ny picture, drawing, photograph, undeveloped film or film negative, motion picture film, videocassette tape or other pictorial representation[.]" Ordinarily, sexual exploitation of a minor is a Class D felony. T.C.A. § 39-17-1003(d). If the number of individual images exceeds one hundred, though, the offense is a Class B felony. T.C.A. § 39-17-1003(d).

The evidence viewed in the light most favorable to the State was that the Defendant searched for and saved images to his cell phone depicting young children in sexual positions or images concentrating on children's vaginal or anal areas. In many of the

images the minors were wearing underwear or were nude. The young age of the minors was readily apparent in some images. When confronted with the images, the Defendant agreed that he saved images showing minor women. This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of sexual exploitation of a minor. It is clear from the verdict that the jury scrutinized the ages of the individuals depicted as well as whether their actions were sexual in nature. The number of images presented to the jury exceeded 500. The jury, after reviewing each individual image, determined that some of the images did not depict sexual activity or lacked another element of the offense. Based on this, the jury did not convict the Defendant for those images. The Defendant is not entitled to relief as to this issue.

## C. Motion for New Trial

The Defendant next contends that the trial court erred when it denied his motion for new trial. The Defendant raises arguments that we have resolved elsewhere in this opinion. The additional allegation was that the motion should have been granted because Investigator Massey violated the trial court's rulings that he not use certain terms. Although not identified in the Defendant's brief, we presume, based on what transpired at trial, that the Defendant is arguing that Investigator Massey's repeated use of the word "minor" to describe the images was erroneous. The State responds that although Investigator Massey repeatedly used the term "minor," the trial court instructed the jury multiple times that it was their determination to make. The State further responds that, as the jury determined that many of the images did not meet the criteria of sexual exploitation of a minor, they followed the trial court's instruction and were not influenced by the testimony. We agree with the State.

During investigator Massey's testimony, the trial court instructed him several times to use the term "young" or "youth," noting that the determination of the subjects' minor age was an element of the offense. The trial court also repeatedly explained to the jury that Investigator Massey was misspeaking when he said "minor," and that they must make the determination that the subjects depicted in the images were in fact minors. The jury is presumed to follow the trial court's instructions, *State v. Parker*, 350 S.W.3d 883, 897 (Tenn. 2011), and thus we presume that the jury made its own determinations about the subjects depicted and was not influenced by Investigator Massey's use of the term "minor." For these reasons, the trial court did not err when it denied the Defendant's motion for new trial on this basis. The Defendant is not entitled to relief as to this issue.

## D. Sentencing

Lastly, the Defendant contends that the trial court erred when it sentenced him. He contends that his sentence was excessive given his lack of criminal history involving sex crimes and the presence of mitigating factors. He further contends that the trial court erred when it imposed consecutive sentencing. The State responds that the trial court properly

imposed a within-range sentence. The State points out that the trial court considered the factors presented in favor of mitigation and declined to apply them. The State argues that the trial court properly applied several enhancement factors to justify a sentence greater than the minimum. As to the imposition of partially consecutive sentences, the State contends that the trial court properly considered the applicable factors, namely the Defendant's extensive criminal record, and reasonably determined that consecutive sentences were justified. We agree with the State.

## 1. Enhancement of the Sentence

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Id.* A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment

of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. The trial court applied enhancement factor (1), that the Defendant had an extensive criminal history, including four felonies, one of which was aggravated robbery. T.C.A. § 40-35-114(1) (2019). The trial court applied enhancement factor (8), that the Defendant had previously failed to abide by the terms of his release into the community. T.C.A. § 40-35-114(8). Both of these factors were supported by the evidence contained in the presentence report. As such, the appropriate application of enhancement factors (1) and (8) supports the trial court's sentencing decision. The Defendant is not entitled to relief on this issue.

## 2. Consecutive Sentencing

Where a defendant is convicted of one or more offenses, the trial court has discretion in determining whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a). "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in Code section 40-35-115(b). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Pollard*, 432 S.W.3d at 861. When imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfield*, 70 S.W.3d 698, 708 (Tenn. 2002). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705).

Here, the trial court found that consecutive sentencing was proper, pursuant to section 40-35-115(b)(2), because the Defendant had a record of extensive criminal activity. The trial court determined that this factor applied in light of the Defendant's four prior felonies and multiple misdemeanors. We agree. The Defendant is not entitled to relief as to this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE